UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER MICHAEL JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-01055-JMS-TAB ) |
| DANIEL KEPLER, | ) ) ) |
| Defendant. | ) |

**Order Granting Defendant's Motion for Summary Judgment,
Denying Plaintiff's Motion for Summary Judgment,
and Directing Entry of Summary Judgment**

Plaintiff Christopher Michael Johnson filed this action alleging that defendant Daniel Kepler, an Indianapolis Metropolitan Police Department officer, violated his Fourth Amendment rights by providing false information on an affidavit to obtain a search warrant that was used to seize Mr. Johnson's clothing and personal property. Both parties have moved for summary judgment, and both motions are fully briefed.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). The Court will consider each party's motion individually to determine whether that party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 324).

## II. Facts

Except where noted, the following facts are undisputed:

Around 1:37 p.m. on December 13, 2017, police executed a no-knock search warrant at a residence on Spann Avenue in Indianapolis. Dkt. 23-1, ¶ 8 (Kepler affidavit). Gunshots were exchanged, and Mr. Johnson sustained injuries. *Id.*, ¶¶ 8−10. Officers began medical intervention in the front yard, cutting off some of Mr. Johnson's clothes in the process. *Id.*, ¶ 10. Shortly thereafter, emergency personnel transported Mr. Johnson to Eskenazi hospital. *Id.*, ¶ 11.

About an hour later, Master Detective Kepler, who had come to the Spann Avenue scene to assist other officers, wrote three affidavits for search warrants related to Mr. Johnson: one for

the scene at Spann Avenue, one for Mr. Johnson's location at Eskenazi Hospital, and one for a residence on Orange Street that matched the address on Mr. Johnson's driver's license.

The Spann Avenue warrant requested authorization to search for "photographs, video, blood, DNA, hair and fibers, clothing, bags, handguns, handgun parts and or ammo or accessories, narcotics, paraphernalia, and all surveillance equipment, electronic storage devices and cell phones." Dkt. 23-4 at 5. Magistrate Therese Hannah granted the warrant. *Id.* at 6. In the front yard of the Spann Avenue property, police found and seized, among other objects, a pair of tan-colored shorts, a pair of blue-colored boxer briefs, plus various shoes, wallets, hats, and miscellaneous personal belongings. Dkt. 23-3 at 5.

The Eskenazi search warrant requested authorization to search "the clothing and personal property of the suspect…located at Eskenazi Hospital," and also sought permission to seize "photographs, video, blood, DNA, hair and fibers, clothing, bags, handguns, handgun parts and or ammo or accessories, narcotics, paraphernalia, and all surveillance equipment, electronic storage devices and cell phones." Dkt. 29-7 at 5. The Eskenazi warrant noted that "the clothing and personal property of the suspect…was removed during medical intervention." *Id.* at 4. Pursuant to the Eskenazi warrant, police found and seized a pair of gold earrings, a gold and silver watch, a gold necklace, a gold bracelet, and a lanyard.

The Orange Street search warrant was requested and issued several hours after the Spann Avenue and Eskenazi warrants. In his affidavit, Officer Kepler noted that the Orange Street address was listed on Mr. Johnson's driver's license. Dkt. 29-5 at 4. Mr. Johnson points out that police were present at the Orange Street address before the Spann Avenue and Eskenazi search warrants were approved. Dkt. 29 at 3−4; dkt. 29-9 at 6 (police audio records noting a location change to Orange Street address). Based on this, he asserts that police obtained his driver's license—which

was found in the front yard of the Spann Avenue residence near his clothes—before the Spann Avenue search warrant was issued. Dkt. 29-2, ¶ (Johnson affidavit).

### III. Discussion

A law enforcement officer violates the Fourth Amendment by intentionally or recklessly (1) including a false material statement in a warrant application or (2) withholding material information from a warrant application. *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). To test for a Fourth Amendment violation in this context, courts "eliminate the alleged false statements, incorporate any allegedly omitted facts, and then evaluate whether the resulting hypothetical affidavit would establish probable cause." *Id.* (cleaned up).

Mr. Johnson's summary judgment filings focus on the following paragraph from the Eskenazi warrant application:

> The suspect arrived at Eskenazi Hospital being followed Uniformed IMPD Officers. The clothing and personal property of the suspect, tentatively identified as Christopher Johnson, was removed during medical intervention. That clothing and personal property holds evidentiary value in this case.

Dkt. 21-1 at 4.

Mr. Johnson and Officer Kepler agree that Mr. Johnson's clothes were cut off while he was lying in the front yard of the Spann Avenue property. According to Mr. Johnson, that puts the lie to Officer Kepler's statement that the clothing was removed during medical intervention. Officer Kepler maintains that the clothing and personal property were removed during medical intervention—the initial medical intervention performed by officers in the front yard of the Spann Avenue property. Dkt. 30 at 2; *see* dkt. 23-4 at 4 (Officer Kepler's Spann Avenue affidavit: "There is blood and medical intervention in several locations on the scene").

Mr. Johnson is correct that the Eskenazi warrant application is ambiguous—perhaps even misleading—about where Mr. Johnson's clothes were removed and where they were located. But there is no evidence that Officer Kepler acted intentionally or recklessly.

Moreover, no reasonable factfinder could conclude that any false or omitted statement was material. If Officer Kepler had precisely described where the clothing was removed and where it was located, the magistrate still would have approved the Eskenazi warrant. Several items of personal property—a watch, a bracelet, a lanyard, and a pair of earrings—were transported with Mr. Johnson to Eskenazi. And as Officer Kepler explained in his affidavit, when a suspect is transported to the hospital, the IMPD routinely requests and obtains a search warrant for the clothing and personal belongings that were on the suspect's person or transported with the suspect to the hospital. Dkt. 23-1 ¶ 19.

Mr. Johnson also asserts that officers seized his clothing from the front yard of the Spann Avenue property without a warrant. But the Spann Avenue search warrant authorized officers to seize clothing. Dkt. 23-4 at 5−6. And, contrary to Mr. Johnson's assertion, the warrant covered the crime scene, which extended into the front yard of the Spann Avenue property. Dkt. 23-4 at 5 ("The scene includes the residence and property surrounding the residence."); dkt. 23-4 at 6 (authorizing officers to "[e]nter into and upon the property and premises"); *cf.* dkt. 29 at 5 (Mr. Johnson asserting, "truth be told none of this stuff should not have even been listed on this search warrant return because this warrant was for the house and everything was outside as seen in the photos.").

Finally, Mr. Johnson asserts that "Officer Kepler had collected all evidence before writing any of the search warrants." Dkt. 29 at 7 (spelling corrected). His only evidence for this claim is a police activity log showing that officers were at the Orange Street address before the Eskenazi and

Spann Avenue search warrants were executed. According to Mr. Johnson, this shows that officers viewed his driver's license. This is not necessarily true, as police have other means to access a person's address. *See*, *e.g.*, dkt. 29-5 (search warrant affidavit, noting that "Federal Probation lists the address for Johnson as . . . Orange St, Indianapolis, IN"); "Sheriff and Police Departments, Enhanced Access Permissions," available at https://www.in.gov/accounts/2340.htm. But even if Mr. Johnson is correct that some officer viewed his driver's license before executing the Spann Avenue and Eskenazi search warrants, it is not reasonable to infer that Officer Kepler "collected all evidence" before those search warrants were issued and executed.

Because Mr. Johnson has provided no evidence from which a factfinder could conclude that Officer Kepler violated his Fourth Amendment rights, Officer Kepler is entitled to judgment as a matter of law, and Mr. Johnson is not.

## IV. Conclusion

Officer Kepler's motion for summary judgment, dkt. [22], is **granted**. Mr. Johnson's motion for summary judgment, dkt. [21], is **denied**. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 4/2/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER MICHAEL JOHNSON
795224
MARION COUNTY JAIL
MARION COUNTY JAIL
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL
Traci.Cosby@indy.gov

Daniyal M. Habib
OFFICE OF CORPORATION COUNSEL
daniyal.habib@indy.gov

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL
anne.harrigan@indy.gov